HENRY S. INGRAHAM *et al.* v. W. J. WARD *et al., as Executors of William Holmes, deceased.*

### No. 8223.

1. SHAWNEE INDIANS—*Valid Deed by Allottee.* The courts of Kansas have been open to Shawnee Indians for the division of lands inherited from allottees who have taken the same in severalty, and where partition is so made, and the secretary of the interior recognizes the proceedings as legal and approves a deed based thereon, the conveyance is valid.

2. SECRETARY OF THE INTERIOR, *Deed Approved by.* In case of a transfer of land held by a Shawnee Indian in severalty, where the consent of the secretary of the interior is required, the approval by him of a deed absolute in form and otherwise sufficient is valid, and will extinguish the Indian title, although the general rules promulgated by that officer for the transfer of such titles have not been strictly pursued.

3. ———— *Discretion and Power of.* Where, by treaty and act of congress, the matter of consent and approval is vested in the discretion and power of the secretary of the interior, he can modify his own rules with respect to the transfer of such lands and the approval of the conveyances, or dispense with them entirely, as the circumstances of the case warrant; and where he acts, and approves the conveyance, the transfer is complete.

4. VENDOR AND PURCHASER—*Rescission—Equitable Relief Denied.* I. purchased from H. a tract of land which was formerly a part of the Shawnee Indian reservation and had been taken in severalty by one of the Shawnees. A deed was executed to I., and he took possession of the land thereunder. About three years afterward an action was brought to recover from I. the balance of the purchase-money, when he set up as a defense that a prior deed from one of the heirs of the allottee to H., and which conveyed a small interest in the land purchased from H., had not been approved by the secretary of the interior, and he asked for a rescission and for damages. There was no fraud or misrepresentation by H. in the sale of the land, and I. had never been disturbed in his possession, nor had any hostile claim of title been made to the land. To cure the alleged defect, the vendor asked for the possession of the deed that he might present it to the secretary of the interior and secure an approval thereof; but I., who had possession of the same, refused to surrender it for that purpose. *Held,* That I. was not entitled to maintain his defense, nor to the equitable relief which he sought.

*Error from Johnson District Court.*

ACTION by W. J. Ward and another, as executors of William Holmes, deceased, against Henry S. Ingraham and another, to foreclose a mortgage. The defendants complain of the judgment for plaintiffs, and bring the case to this court. All the material facts are stated in the opinion herein, filed March 7, 1896.

*J. P. Hindman*, and *John M. Robertson*, for plaintiffs in error.

*Hutchings & Keplinger*, for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J.: On April 1, 1887, H. S. Ingraham purchased from William Holmes about 100 acres of land situate near Kansas City for $32,500. He made a cash payment of about one-third of the purchase price, and for the balance due he executed two promissory notes, equal in amount, payable in one and two years after date, and as security for the payment he executed a mortgage upon the land which he had purchased. He immediately entered into the possession of the land, which has never been disturbed, nor has any one ever claimed an adverse title to the same. Default having been made in the payment of the notes, and Holmes having died, the executors of his will, on July 16, 1890, brought this action for the recovery of the indebtedness which was then due, and for the foreclosure of the mortgage. In his answer, Ingraham alleged that Holmes did not have a title to the land conveyed to him, that the title to the same was in some of the Shawnee tribe of Indians, and that, while Holmes represented that he had acquired the full legal

title to the land, the conveyances and proceedings had were not sufficient to transfer the title to Holmes; and he therefore prayed for a rescission of the contract, and for damages to the amount of the purchase-money. In their reply, the plaintiffs below alleged that at the time of the conveyance Ingraham had full knowledge of all the facts in regard to the title to the property; that a complete abstract, showing the condition of the title, was delivered to Ingraham, who caused the same to be examined by his attorney, who approved the title. It was further alleged, that the only defect in the conveyances to Holmes was the failure to obtain the formal approval of the secretary of the interior to a conveyance of 40 acres, and that when it was learned that an objection was made to the deed for the want of such approval, the plaintiffs below applied to Ingraham, to whom the deed had been delivered, for the same, in order that they might obtain the formal approval of the secretary, and in that way cure the defect, but that Ingraham refused to deliver the deed to the plaintiffs below for that purpose, and that, solely by reason of such refusal, the plaintiffs were prevented from procuring the approval and curing the defect. A trial of the issues resulted in favor of the plaintiffs below, and a judgment was rendered against Ingraham for the amount of the debt and for a foreclosure of the mortgage.

It appears that the land in question is a part of that allotted to Captain Parks, a Shawnee Indian, under the treaty with the Shawnees of May 10, 1854. Article 9 of the treaty provided for "issuing to such of the Shawnees as may make separate selections patents for the same, with such guards and restrictions as may seem advisable for their protection therein." (10 U. S. Stat. at Large, 1057.) In an act approved

March 3, 1859, congress enacted a provision au-
thorizing the issuance of patents to Indians entitled
to separate selections of land, and to their heirs, up-
on such conditions and·limitations and under such
guards and restrictions as may be prescribed by the
secretary of the interior. (11 U. S. Stat. at Large,
431.)   In the patents issued there was a stipulation
that the land conveyed "shall never be sold or con-
veyed by the grantee or his heirs without the consent
of the secretary of the interior for the time being."
Although Captain Parks was a member of the Shaw-
nee tribe of ·Indians, he ·was not a full-blood, and is
spoken of by the witnesses as being "more of a white
man than an Indian."   He had two children, Sally
and Mary.   Mary married a white man named Don-
aldson, and she died, leaving two children, Catharine
and Rebecca.   In 1859, Captain Parks died, leaving
as his heirs his daughter Sally, who had intermarried
with one Rogers, and his two granddaughters, Cath-
arine Donaldson and Rebecca Donaldson.   Catharine
married John Swartzel, a white man, and Rebecca
married a white man named Vogel, and upon his
death she afterward married one Joseph Fitzpatrick.
After the death of Captain Parks, and in 1865, a par-
tition suit was instituted in the district court of Wy-
andotte county, and one-half of the Parks land was
set apart to Sally, and the other half to Catharine and
Rebecca.   The judgment determining their rights and
partitioning the property was affirmed in this court.
( *Swartzel v. Rogers*, 3 Kan. 374.)   After the partition
was made, Sally Rogers sold and conveyed the por-
tion set apart to her to Catharine and Rebecca, who
paid her full value for the same, and the deed of con-
veyance was approved by the secretary of the interior.
In 1868, by mutual agreement between Catharine and

Rebecca, a partition of the land which they held in common was made; and after Rebecca had died a partition proceeding was had between Catharine Swartzel and the heirs of Rebecca, in the district court of Wyandotte county, in which the division theretofore made by mutual agreement was confirmed. Subsequently, and in 1879, a division was made by the Shawnee council, and a deed was made conveying the share set apart to Catharine, and the deed which recited the partition and was based thereon was approved by the secretary of the interior. In January, 1879, Catharine Swartzel conveyed about 60 of the 100 acres in question to William Holmes, and this deed was presented to and approved by the secretary of the interior. On November 29, 1881, Catharine Swartzel executed a conveyance to William Holmes, conveying to him 40 of the 100 acres in question, but this deed was not presented to nor approved by the secretary of the interior.

Ingraham claims that the lack of such approval is a fatal defect in the title, and he also insists that the partition proceedings and other steps taken to transfer the title to the land in question to Catherine Swartzel were insufficient. Ingraham, as we have seen, acquired the land in 1887; but he made no objection to the kind of title which he received until 1890, when there was a great shrinkage in the value of land, nor until steps had been taken to enforce the collection from him of the balance of the purchase-money. He has had undisputed possession of the land since the purchase, and there has been no assertion of a hostile title to it. No claim has been made by any of the heirs of Captain Parks, nor by any of their grantees, and the only one to question the sufficiency of the title is Ingraham himself. When he

purchased the land, an abstract of the title was furnished to him, and the purchase was not completed until his attorneys had examined the abstract and title papers and reported that Holmes had a good title. The facts bearing upon the condition of the title were as well known to him as to Holmes, and if the failure to obtain the approval of the secretary of the interior to one of the Holmes deeds is a defect, he had full knowledge of the same. Holmes appears to have acted openly and in good faith in the transaction; and that the complete title was in his grantor, Catharine Swartzel, is well established. The attack made upon the partition proceedings cannot be sustained. The state courts were open to the Indians for the division of their property, and their right to resort to these tribunals for adjustment of their rights has been frequently recognized. (*Blue Jacket v. Comm'rs of Johnson Co.*, 3 Kan. 299; *Swartzel v. Rogers*, 3 id. 374; *Wiley v. Keokuk*, 6 id. 94; *Felix v. Patrick*, 36 Fed. Rep. 457; *Felix v. Patrick*, 145 U. S. 332.) The partition proceedings were also recognized by the federal authorities, and deeds based upon the division of property so made were approved by the secretary of the interior. Catharine Swartzel in this way received by approved deeds the share of Sally Rogers, which was one-half of the Parks land, and also the share of her sister, Rebecca, which was one-fourth of the land. The remaining one-fourth interest she inherited from her grandfather.

The deeds to Catharine Swartzel contained

1. Shawnee Indians— valid deed by allottee.

no restrictions, and, being absolute in form, the approved deed conveyed to her an absolute title. As to the interest purchased from her coheirs, she is to be regarded the same as any other purchaser, and the approved conveyance

divested the title of the United States and placed the interest named outside of the restrictions upon the sale of Indian lands.   Some of the steps preliminary to the transfers do not conform strictly with the rules which had been promulgated by the secretary of the interior, but, as that officer has actually approved the conveyances, the departure from the prescribed rules becomes unimportant.   The treaty leaves the matter of restrictions upon alienation of these lands with congress, and congress, in turn, has left it wholly with the secretary of the interior.   Neither the treaty nor the act of congress expressly provides any conditions or limitations, restrictions or guards, and hence the matter of consent and approval rested in the discretion and power of the secretary. He could modify his own rules, or dispense with them entirely, as the circumstances of the case seemed to warrant ;  and when he acts and approves, the transfer is complete and the conveyance valid.   It follows, therefore, that the three-fourths interest of Captain Parks and his heirs had been completely transferred to Catharine Swartzel, and as to the 60-acre tract, the deed of which to Holmes was approved by the secretary, there can be no objection to the title.   The Holmes deed to the 40-acre tract was not approved, and as to the three-fourths interest in the same which she had purchased from her coheirs, and which had been approved by the secretary, no approval was necessary.   The Indian title to the extent of the three-fourths interest had been extinguished by the approved conveyance.

It is earnestly insisted on the part of the defendants in error that no approval was necessary as to the one-fourth interest in the 40 acres covered by the unap-

*[Margin notes: 2. Secretary of the interior, deed approved by. — 3. Discretion and power of.]*

proved deed. It is contended that the treaty provisions with reference to restrictions only extend to the particular Shawnee who makes selection, and can have no application to the heirs of the allottee, and that any extension of the protection beyond the allottee, or the placing of any limitations upon a transfer by heirs of the allottee, are inconsistent with the treaty, and therefore invalid. It is further contended that it can have no application in the present case, because Catharine Swartzel, from whom Holmes purchased, was not a member of the Shawnee tribe of Indians, and that long before the transfer of the land she had abandoned all tribal relations with them. She was not the allottee, nor the child or direct heir of the allottee. Her grandfather was only a half-breed Indian. Her father was a white man, and she married a white man and lived apart from the Indians, and never afterward rejoined them. It appears that the greater part of the tribe moved from Kansas, and located in the Indian territory, about 1872. In pursuance of the treaty of July 19, 1866, an agreement was entered into between the Shawnees and the Cherokee nation, by which the Shawnees, upon certain terms and conditions, were incorporated into the Cherokee tribe, and forever after are to remain a part of the Cherokee nation, on equal terms in every respect and with all the privileges and immunities of native citizens of the Cherokee nation. By that agreement, it was provided that the Shawnees were to abandon their tribal organization, and the agent of the Cherokees was to act for the Shawnees. It is claimed, however, that for some purpose the United States authorities recognize the existence of a tribal organization, and therefore that it cannot be said that the tribal organization has been

completely dissolved. (*Brown v. Steele*, 23 Kan. 672;
*United States v. Black-Feather*, 15 Sup. Ct. Rep. 63.)

These questions do not require a determination at
this time, because, even if an approval of the last deed
is necessary, Ingraham is not entitled to
the equitable relief which he seeks. He
did not bring an action on the covenants
of his deed when he discovered the absence
of an approval, but remained silent until the action to
recover the purchase-money was brought. The sale
was executed, and he has accepted and enjoyed posses-
sion under the conveyance which was made to him.
There was no misrepresentation or fraud on the part
of his grantor, and if there is any defect in the title his
possession has never been disturbed, and no one has
laid claim to any interest in the land. If there is any
want of title, it is a mere breach of the covenants of
seizin, and as he has never been disturbed in his oc-
cupancy or seizin, the breach is but technical, and
only nominal damages could be recovered. In *Hacker
v. Blake*, 17 Ind. 97, it was said that "the entire want
of title was a breach of the covenants of seizin, but for
such breach, while the purchaser retains possession,
he can recover only nominal damages, and for such
damages a judgment will not be reversed." See,
also, *Black v. Thompson*, 36 N. E. Rep. (Ind.) 644, and
cases cited. An action has not been brought on the
covenants, but Ingraham is resisting payment of the
purchase-money and asking for a rescission of the
contract. When the plaintiffs below learned of In-
graham's objection to the title, they dismissed the
action first brought, and applied to him for the unap-
proved deed, for the purpose of presenting it to the
secretary of the interior for his approval. He had
possession of that deed and understood the purpose

*4. Vendor and
purchaser—
rescission—
equitable re-
lief denied.*

C. K. & W. Rld. Co. v. Ransom.

for which the application was made, but he refused to give them an opportunity to obtain the approval and cure the defect. Failing to obtain the original, the plaintiffs below sought to obtain the approval of a copy of the deed, but the officers of the interior department declined to act upon a copy while the original was in existence. The plaintiffs below had a right to perfect the title to the land at any time before the question of rescission was determined. Ingraham was asking equitable relief, and yet, instead of doing equity, he sought, by his refusal, to prevent the cure of the defect and the completion of the title. If he had allowed the deed to have been approved it would have related back to the execution of the deed and validated it from that time. (*Pickering v. Lomax*, 145 U. S. 310.)

The judgment of the district court will be affirmed.

All the Justices concurring.