STACY and another, Appellants, vs. LA BELLE, Respondent.

*April 18 — May 3, 1898.*

*Jurisdiction of state courts over contracts by Indians.*

In the absence of any federal statute or treaty to the contrary, a state court has jurisdiction of an action on a contract in favor of a white man against an Indian belonging to a tribe and a particular reservation.

APPEAL from a judgment of the circuit court for Shawano county: JOHN GOODLAND, Circuit Judge. *Reversed.*

For the appellants there was a brief by *Eugene M. Wescott,* attorney, and *F. M. Guernsey,* of counsel, and oral argument by *Mr. Wescott.*

For the respondent the cause was submitted on the brief of. *G. C. Dickinson.* To the point that the state courts have no jurisdiction over the Indian tribes or members thereof, he cited *Cherokee Nation v. Georgia,* 5 Pet. 1; *Worcester v. Georgia,* 6 id. 516; *U. S. v. Thomas,* 151 U. S. 577; *U. S. v. Holliday,* 3 Wall. 407; *U. S. v. Partello,* 48 Fed. Rep. 670; *U. S. v. Boyd,* 68 id. 577; *U. S. v. Mullin,* 71 id. 682; *Morris v. M. P. R. Co.* 78 Tex. 17; *Carter v. U. S.* 37 S. W. Rep. 204; *U. S. v. Payne,* 4 Dill. 387; *Mungosha v. Steinbrook,* 3 id. 418; *Gray v. Coffman,* id. 393; *Mackey v. Coxe,* 18 How. 100.

CASSODAY, C. J. This action is to recover the balance of $279.65 due on account for goods, wares, and merchandise sold and delivered by the plaintiffs, as copartners, to the defendant, between July 1, 1888, and October 17, 1889. The defendant answered, and alleged, in effect, that he bought the goods, wares, and merchandise as partner with another, and that he was an Indian belonging to the Menominee tribe; that he resided with the tribe upon the reservation; and that the same was under the charge, direction, and control

of the United States Indian agent,— and prayed that the action be abated and dismissed. The cause was thereupon referred to a referee to hear, try, and determine; and, upon the cause being tried before the referee, he found, as matters of fact, in effect, that there was due to the plaintiffs from the defendant the amount claimed, with interest from October 17, 1889; that the defendant was an Indian, and belonged to the tribe, and resided upon the reservation; that there was nothing in any treaty with the tribe, nor any act of Congress, to prevent the state courts from taking jurisdiction; and hence that the plaintiffs were entitled to judgment.

The trial court modified the findings of the referee, but not essentially as to any question of fact, but found more in detail as to the status of the defendant as an Indian, and to the effect that the tribe held the reservation by treaty for their exclusive use and occupancy; that the same was under the charge, direction, and control of an Indian agent of the United States; that the goods and merchandise mentioned were furnished, sold, and delivered to the defendant by the plaintiffs on the reservation while *Stacy* was engaged in business as Indian trader on the reservation under and by virtue of the permit and license issued by the United States to him, as such Indian trader; that the defendant was a Menominee Indian, and a member of the tribe, born upon the Menominee reservation, and enrolled as such; that his mother lived upon the reservation, and was a member of the tribe; that his father was a white Frenchman, and not a member of the tribe. As conclusions of law, the court found, in effect, that the treaties and acts of Congress precluded the state courts from taking jurisdiction in a case like this, and that the trial court had no jurisdiction over the defendant in this action, and ordered judgment against the plaintiff, dismissing this action, but without costs. From the judgment entered thereon accordingly, the plaintiff brings this appeal.

Undoubtedly, Congress has power " to regulate commerce with the Indian tribes." Const. U. S. art. I, sec. 8. Under this clause of the constitution, it must be conceded that Congress has power to regulate all traffic and commercial intercourse among or with Indians, even when the tribe is located wholly within the limits of a single state. *Brown v. Maryland*, 12 Wheat. 419; *U. S. v. Holliday*, 3 Wall. 407; *U. S. v. Mayrand*, 154 U. S. 552. In making such regulations Congress may, undoubtedly, give to the federal courts exclusive jurisdiction. State courts may be precluded from taking jurisdiction in such cases, not only by congressional enactments, but by treaty between the particular tribe and the federal government; since such treaty, when made, under the constitution, becomes a part of " the supreme law of the land." Const. U. S. art. VI; *Worcester v. Georgia*, 6 Pet. 515; *U. S. v. Forty-three Gallons of Whisky*, 93 U. S. 188; *Ex parte Crow Dog*, 109 U. S. 556; *Farrington v. Wilson*, 29 Wis. 383. But it does not follow from such mere grant of such powers to the federal government that the state courts are precluded from taking jurisdiction in such cases, as seems to have been held by the trial court. On the contrary, the supreme court of the United States has frequently held, as was declared in the Federalist before the adoption of the constitution, in effect, that the powers delegated to the federal government were exclusive of the powers reserved to the states in only three classes of cases. One class is where the particular power granted is therein expressly stated to be exclusive; another class is where the power is granted in one clause, and then in some other clause or clauses the states are expressly prohibited from exercising the like authority; and the other class is where the power granted is, inherently and absolutely, repugnant to the exercise of a like power by the states,— as, for instance, powers which cannot be fully exercised within the limits of a single state, like the power " to regulate commerce with foreign nations and among the several states." No. 31 Dawson's (No. 32)

Federalist; *Cooley v. Board of Wardens*, 12 How. 318; *Gilman v. Philadelphia*, 3 Wall. 713; *Henderson v. Mayor of New York*, 92 U. S. 259; *Mobile Co. v. Kimball*, 102 U. S. 691; *Leisy v. Hardin*, 135 U. S. 100, 108, 109.

Manifestly, the case at bar does not belong to either of those classes. In this last case the distinction is clearly made by Chief Justice FULLER. Acting upon the principles suggested, Congress has expressly provided that "the jurisdiction vested in the courts of the United States," in the eight particular classes of cases therein mentioned, should "be exclusive of the courts of the several states." One of the classes of cases so mentioned is, "Of all crimes and offenses cognizable under the authority of the United States;" and another is, "Of all suits for penalties and forfeitures incurred under the laws of the United States." R. S. of U. S. sec. 711. With certain exceptions, those statutes provide that "the general laws of the United States, as to the punishment of crimes committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, *shall extend to the Indian country.*" R. S. of U. S. sec. 2145. But that section "shall not be construed to extend to crimes committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively." R. S. of U. S. sec. 2146. The exclusive jurisdiction of the federal courts was further extended to certain other crimes committed by Indians by the act of March 3, 1885 (23 Stat. at Large, 385, ch. 341, sec. 9). For a construction of these statutes, see *In re Wilson*, 140 U. S. 575; *In re Mayfield*, 141 U. S. 107; *Smith v. U. S.* 151 U. S. 50; *Westmoreland v. U. S.* 155 U. S. 545. In speaking of the statute as it stood before the act of 1885, Mr. Justice MILLER said: "It does not interfere

Stacy and another vs. La Belle.

with the process of state courts within the reservation, nor with the operation of state laws upon white people found there.   Its effect is confined to the acts of an Indian of some tribe, of a criminal character, committed within the limits of the reservation." *U. S. v. Kagama*, 118 U. S. 383.   It has frequently been held that, except in so far as the jurisdiction of state courts has been restricted by federal legislation or treaty, they may take jurisdiction even of crimes committed by Indians.   *State v. Doxtater*, 47 Wis. 278; *State v. Harris*, 47 Wis. 298; *People v. Ketchum*, 73 Cal. 635.

Counsel has not cited any federal statute or treaty which prohibits state courts from taking jurisdiction of an action on contract against an Indian, as in the case at bar, and we find none.   The plaintiff *Stacy* was not an Indian agent, but he was licensed and expressly authorized to sell goods to Indians as an Indian trader.   R. S. of U. S. secs. 2128–2132. The goods for which this action was brought were therefore properly sold to the defendant.   In the absence of any federal statute or treaty to the contrary, and upon the principles stated, we must hold that a state court may take jurisdiction of an action on contract in favor of a white man, and against an Indian belonging to a tribe and a particular reservation. *Stokes v. Rodman*, 5 R. I. 405; *Swartzel v. Rogers*, 3 Kan. 374; *Ingraham v. Ward*, 56 Kan. 550; *Godfroy v. Scott*, 70 Ind. 259; *Ke-tuc-e-mun-guah v. McClure*, 7 L. R. A. 782, 122 Ind. 541; *Gho v. Julles*, 1 Wash. Ter. (N. S.), 325.   In one of these cases it was held that "the fact that the lands of the defendant, who is an Indian, are not liable to levy and sale under a judgment, is no ground for refusing a judgment against him."   7 L. R. A. 782.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with direction to enter judgment in favor of the plaintiffs, and against the defendant, in accordance with the findings of the referee.