Pee CURIasí :
The questions herein arise- on the defendants’ demurrer to the amended petition on substantially the same grounds as those assigned on the demurrer to the original petition, which were, in substance, (1) that the jurisdictional act of May 29, 1908 (35 Stat. L., 444, 445), was in violation of certain provisions of the Constitution of the United States, and (2) that the facts averred were not sufficient to constitute a cause of action.
In the original petition the claimant, by the averments thereof, sought to fix liability upon the tribe as guarantor or upon the individual members thereof for the supplies furnished them by the claimant, as therein alleged, and judgment was praj^ed accordingly.
The material averments of the original petition are set forth in the opinion of the court (46 C. Cls., p. 68), and need not be repeated here further than to say that by the second paragraph thereof it is averred in substance that “it was agreed by and through the Indian agent and the head men of the Menominee Tribe, to and with this petitioner and said Stacy, that the Menominee Tribe of Indians would indemnify petitioner and said Stacy and assure the payment to them of all supplies so to be furnished by them.”
The demurrer, as to the liability of the tribe, was sustained with leave to amend and overruled as to the liability of the individual Indians, the court, among other things, saying:
“ We are instructed in the jurisdictional act to ‘ determine if such liability be that of said Menominee Tribe of Indians as a tribe or that of individual members of the tribe.’ It appears to us that the promise or ‘indemnity’ of the Menominee Tribe of Indians as alleged is but a promise to pay the debt of another and clearly within the statute of frauds. There is no averment in the petition of any act indicating that the credit for the goods sold was given to the tribe. In fact, every averment shows that the credit was given to the Indians individually, and the tribe was simply a guarantor.”
*283 And further commenting on the effect of a promise of indemnity, with various citations of authorities in support of the propositions stated, the court said: .
“It is nowhere alleged in the petition that any part of the proceeds received for the logs which were cut went into the tribal funds. We have no hesitancy in deciding that under the averments of the petition the Menominee Tribe of Indians is but a naked guarantor for the debt of another, and such promise not being in writing is void under the statute of frauds.
“It might further be added that it is very doubtful whether the ‘head men’ of the tribe, or the tribe in any manner, had any right to make such a contract as stated in the petition, even if it was in writing.” (R. S., 2103-2106.)
Since that decision the claimant has amended the second paragraph of his petition; and after stating therein that 10 per cent of the proceeds arising from the sale of timber were to go to the benefit of the tribe, it is averred in substance that in December, 1881, the tribe was in a destitute condition, without credit or available means of support, and that while they had procured the right to cut and sell dead and down timber on the reservation, they were unable to go ahead for the reason that they lacked the equipment and supplies necessary therefor; that to meet their necessities the chiefs and head men of the tribe, with the consent of the members thereof in council, as well as with the approval of the Indian agent, entered into an oral agreement with one Wescott, the then duly licensed Indian trader, whereby the tribe agreed that payment for all supplies furnished to the individual members should be made out of the first proceeds arising from the sale of logs, such sale to be made through the Indian agent, not, however, exceeding $2.50 for each thousand feet of logs cut and sold, which agreement, it is further averred in substance, was continued in 188T in full force by the chiefs and'head men, acting for the tribe, with the claimant and his then associate, Stacy, who had in 1887 succeeded said Wescott as Indian trader, and, further, that the supplies so furnished by the claimant under the agreement so continued were up to 1889 paid for, but that thereafter the supplies to furnished to the individual members, amounting *284 in the aggregate to $18,087.46, remain unpaid for. Hence this action.
It will be observed that in the opinion ruling on the demurrer to the original petition doubt was expressed as to whether the head men of the tribe or the tribe in any manner could contract, even if in writing, without the approval of the Secretary of the Interior, as provided by Kevised Statutes, sections 2103 to 2106, wherein, by section 2103, it is provided in substance that no agreement shall be made by any person with any tribe of Indians or member thereof not citizens of the United States for the payment or delivery of money or other thing of value relative to their lands or to any claims growing out of or in reference to annuities, installments, or other money claims, demand, or thing under laws or treaties with the United States or official acts of any officer thereof, describing minutely the manner in which such agreement shall be made.
It is therefore clear that if the Indians are not citizens no right of action can be founded upon the oral agreement averred in the petition unless the claimant is relieved therefrom by the provisions of the jurisdictional act. That act, it must be noted, does not create a claim or declare any liability. It does waive the statute of limitations and confers upon the court authority to determine and render final judgment for any balance found due for supplies, goods, etc., furnished members of said tribe after the 1st day of January, 1880.
The act in express terms directs the court, first, to ascertain the amount due, if any, and whether any liability exists therefor, and “then determine if such liability be that of the said Menominee Tribe of Indians as a tribe or that of individual members of said tribe.”-
It will be observed that the provisions of section 2103 of the Eevised Statutes referred to apply only to those Indians who were “not citizens of the United States.” It follows that .if they were citizens of the United States at the time of the alleged agreement the courts of Wisconsin had jurisdiction to adjudicate such claims, whether such contract be treated as express or implied. (Stacy v. La *285 Belle (99 Wis., 524), Ingraham v. Ward (56 Kans., 550), and cases there cited.) If they were not citizens of the United States, then the agreement so made can not be enforced in this court, as the same was not reduced to writing with the approval of the Secretary of the Interior as provided by statute.
The action of the Commissioner of Indian Affairs in sanding a special agent, as averred, to make some arrangement whereby the Indians could obtain equipment, and supplies to enable them to engage in logging business can not, even with the approval, as alleged, of the Indian agent, be construed as authority to create a liability against the tribal funds. On the contrary, it is averred that payment was to be made “ out of the first proceeds from the sale of logs so to be cut and sold.” This is the extent of the tribal liability. It is not shown that the tribe as such received, or were to receive, any of the supplies so furnished under the terms of the agreement.
The tribe was not sponsor in the sense of surety -for the members of the tribe, as they were not charged with payment, but the tribe, through its chiefs and headmen, agreed that the first proceeds arising from the sale of the logs through the Indian agent should be applied to the payment of supplies so furnished.
As averred in the fourth paragraph of the petition, the Indian agent “received the proceeds of the sale of logs so cut, hauled, banked, and delivered by the Indians who were furnished supplies by petitioner,” who, it is in substance averred, failed to pay the claimant for such supplies; but the tribe can not be held responsible for his neglect; nor can a liability be created therefor against the tribe, as the extent of the liability of the tribe under the agreement was that the proceeds arising from the sale should be first applied to the payment of supplies so furnished. The default of the agent can not be construed as the default of the tribe.
It follows, therefore, that whether the defendant Indians were or were not citizens of the United States no liability attached to the tribe.
*286 Having reached this conclusion it is unnecessary to consider other questions raised by counsel.
The demurrer is sustained and petition dismissed.