## HALLAM v. COMMERCE MINING & ROYALTY CO. et al.

District Court, N. D. Oklahoma. May 4, 1929.

Joseph W. Howell, of Tulsa, Okl., for plaintiff.

A. Scott Thompson, Ray McNaughton, and F. D. Adams, all of Miami, Okl., and George S. Ramsey, of Tulsa, Okl., for defendants.

KENNAMER, District Judge. This is a suit in equity to have declared void lead and zinc mining leases, and for an accounting for the sale of ores made during the mining operations by the lessee. Anna Beaver Hallam is the owner of 200 acres of land located in Ottawa county, Okl., which was allotted to her as a member of the Quapaw Tribe of Indians. She is a full-blood Quapaw, and by act of Congress is classed as an incompetent Indian. She received her allotment of land as a member of the Quapaw Tribe of Indians pursuant to the Act of March 2,

372

1895 (28 Stats. 876, 907). Under the provisions of this act the allotments were inalienable for a period of 25 years from and after the date of patent.

In September, 1907, Don P. Wills, acting for James F. Robinson and his associates, who subsequently organized the Commerce Mining & Royalty Company, obtained a lease from the allottee for a term of 10 years and for so long thereafter as lead and zinc should be found in paying quantities. The lease provided for the payment of a royalty of 5 per cent. to the allottee. Thereafter Wills obtained other leases as follows: One dated August 22, 1911; another dated September 28, 1912; another September 19, 1913; and one on January 21, 1915. All the leases were for the term of 10 years from date.

On June 11, 1915, Wills executed to Anna Beaver an instrument surrendering and canceling all of the prior leases made to him, and on the same date she executed a mining lease to Wills for a 10-year term providing for the payment of a royalty of 5 per cent.

On the 18th day of October, 1922, the Commerce Mining & Royalty Company secured from the allottee a lead and zinc mining lease for a term of 15 years and as much longer thereafter as lead and zinc ore should be found in paying quantities, but not longer than March 3, 1946, providing for a royalty of 7½ per cent. to October 17, 1925, and thereafter 10 per cent. to be paid to the allottee. The Secretary of the Interior, acting pursuant to authority of the Act of March 3, 1921 (41 Stat. 1225, 1248), approved this lease and also entered an order approving the lease executed on June 11, 1915.

It appears from the evidence introduced that the defendants in this action never entered upon the land nor engaged in mining operations thereon until after the execution of the lease of June 11, 1915.

It is disclosed by the evidence that subsequent to the execution of this lease the defendants, through their sublessees, have successfully mined the property, which has resulted in profit to both the lessor and the lessee.

█ Counsel for the complainant seeks a cancellation of all of the leases, and an accounting for the ores mined and sold by the defendants upon the theory that the transactions commenced by the defendants with the allottee in September, 1907, and through all the years, including the taking of the 1915 and 1922 leases, were unlawful and in violation of the provisions of the Act of Congress approved June 7, 1897 (30 Stat. 62, 72), and the Act of June 25, 1910 (36 Stat. 857; section 115, tit. 18, USCA), providing for the leasing of Quapaw Indian lands for mining purposes and for terms not to exceed 10 years. It is no longer an open question in the construction of the Act of June, 1897, that any mining lease entered into with a Quapaw restricted Indian, binding the land of the allotment of such Indian for a longer period than 10 years, is void. U. S. v. Noble et al., 237 U. S. 81, 35 S. Ct. 532, 59 L. Ed. 844; Smith v. McCullough, 270 U. S. 463, 46 S. Ct. 338, 70 L. Ed. 682.

It is quite clear that the lease dated September 30, 1907, was invalid. All the other leases prior to the lease of June 11, 1915, were by written instrument executed by the lessee, surrendered, and canceled. The defendants never entered into the possession of the land under any of the leases prior to June 11, 1915, or in any way attempted to conduct mining operations thereunder. It is disclosed by the evidence that the defendants acting under the construction of the leasing act of June 7, 1897, by the Supreme Court of the U. S. in the case of U. S. v. Noble et al., supra, executed the cancellation and surrender contract.

It is plain from the rule announced in this case that any lease contract entered into for the purpose of binding the land of restricted Quapaw Indians for a longer period than 10 years was invalid.

But I can perceive of no reason, nor do I find anything in the controlling provisions of the leasing statutes, to prevent the allottee, upon the surrender and cancellation of all prior void leases, from executing a valid lease contract with the lessee who surrendered and canceled of record all prior invalid contracts. It was held in the case of U. S. v. Abrams et al. (C. C. A.) 194 F. 82, this could be done.

Under the authority of the Act of March 3, 1921, the lands of a restricted Quapaw allottee may be leased for mining purposes on such conditions and terms as may be prescribed by the Secretary of the Interior. Whitebird et al. v. Eagle-Picher Lead Co. (D. C.) 28 F.(2d) 200.

█ The leases of 1915 and 1922 involved in this action having been approved under statutory authority by the Secretary of the Interior, in the absence of fraud, must be held to be valid contracts.

█ Congress had the exclusive power to select the agency to approve Quapaw mineral leases, and, having invested this power in the Secretary of the Interior, the proper exercise of this power necessarily involves the exercise

of judgment and discretion, and, in the absence of actual fraud, the exercise of such discretion is not reviewable by the courts. U. S. v. California & Oregon Land Co., 148 U. S. 32, 13 S. Ct. 458, 37 L. Ed. 354.

It has been suggested that the approval of the Secretary was not made in conformity to the prescribed rules and regulations promulgated by him. It is well settled, where the Secretary makes the rules pursuant to statutory authority, the enforcement of such rules in any given case is within his discretion. Ingraham v. Ward, 56 Kan. 550, 44 P. 14; Gage v. Gunther, 136 Cal. 338, 68 P. 710, 89 Am. St. Rep. 141–149; Molone et al. v. Wamsley, 80 Okl. 181, 195 P. 484.

In this case the lands of this allottee were mined by defendants under leases approved by the Secretary of the Interior as provided by law.

A decree should be for the defendants, dismissing the bill of the plaintiff. It is so ordered.