[No. 4637. Decided November 28, 1903.]

THE STATE OF WASHINGTON, *Respondent*, v. TOMMY SANTIAGO HOWARD, *Appellant*.[1]

COURTS—STATE OR FEDERAL—OBJECTION TO JURISDICTION—WHEN MAY BE RAISED. An objection going to the jurisdiction of the state court to try a cause for the reason that the federal courts have exclusive jurisdiction of the offense and of the person of the accused may be raised for the first time in the supreme court.

HOMICIDE—INDIANS—OFFENSE COMMITTED ON RESERVATION—JURISDICTION OF STATE COURT—TRIBAL RELATIONS—WHEN NOT SHOWN —SEVERING RELATIONS—PROOF OF WHEN NOT NECESSARY. Where an Indian accused of murder committed upon a reservation testified that he was not a member of the tribe and had never had any tribal relations therewith, and was never allied by association with his ancestral tribes, and that he lived and worked among white people, no tribal relations are shown, and he cannot claim that the federal courts have exclusive jurisdiction of the offense on account of the failure of the prosecution to prove that he had severed his tribal relations.

SAME—JURISDICTION OF FEDERAL COURTS LIMITED TO INDIANS SUSTAINING TRIBAL RELATIONS. A state court has jurisdiction of an offense committed within the limits of a reservation against an Indian, by another who had never sustained any tribal relations, since Act. Cong. 1885, c. 341, § 9, 23 Stat. 385, providing that a crime by an Indian against another within the limits of a reservation shall be tried by the federal courts, must be limited to

[1]Reported in 74 Pac. 382.

Indians sustaining, tribal relations, when construed in connection with all the other sections of the act, which all relate only to such Indians.

HOMICIDE—DEGREES OF OFFENSE—PERPETRATION OF RAPE—INSTRUCTIONS PROPER AS TO LESSER DEGREE ALTHOUGH EVIDENCE TENDED TO SHOW FIRST DEGREE ONLY. Under Bal. Code, § 7035, defining murder in the first degree as killing another with deliberate and premeditated malice, or in the perpetration of rape, etc., when an information charges the crime by strangling, it is not error to instruct as to lesser degrees and manslaughter in accordance with Bal. Code, § 6955, although the evidence tended strongly to show that the crime was committed while accused was perpetrating the crime of rape upon deceased (murder in first degree); since the crime defined by said § 7035, is a single one, however accomplished, and construed in connection with § 6955, authorizes a verdict for any degree inferior thereto.

SAME—INSTRUCTIONS—NECESSITY OF INQUEST—CORONER'S REASONS FOR NOT HOLDING. In a prosecution for murder, where the cross-examination of the coroner, who had declined to hold an inquest, was such as to leave the impression upon the minds of the jury that the inquest was necessary as a prerequisite to a prosecution, an instruction that no duty devolved upon him to hold an inquest when the cause of death was known to him, was not prejudicial as showing that the coroner was satisfied that the death was caused by the accused as charged.

CRIMINAL LAW—PRESENCE OF DEFENDANT IN COURT—RECORD WHEN SUFFICIENT. The failure of the record to show that the accused was present at the trial on a day named, cannot be urged as error, where the certificate discloses that the statement does not contain all the material facts, and the same is not certified to contain all the material facts that did occur, nor where a supplemental record shows that he was present on the day in question.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered October 7, 1902, after a trial and conviction of the crime of manslaughter; also, from orders over ruling motions for a new trial and in arrest of judgment. Affirmed.

*F. R. Baker* and *Leo & Cass,* for appellant. The killing in the perpetration of a rape is *ipso facto* and

necessarily murder in the first degree. *Washington v. State,* 25 Tex. App. 387, 80 S. W. 642. It is error to instruct as to manslaughter where the crime must have been murder in the first degree. *State v. Kilgore,* 70 Mo. 546; *State v. Stoeckle,* 71 Mo. 559; *State v. Mahly,* 68 Mo. 315; *People v. Sanchez,* 24 Cal. 17; *State v. Sexton,* 147 Mo. 89, 48 S. W. 452; *Crawford v. State,* 12 Ga. 480; *State v. Edwards,* 70 Mo. 480; *State v. Erb,* 74 Mo. 199; *State v. Cross,* 72 Conn. 722, 46 Atl. 148; *People v. Long,* 39 Cal. 694; *State v. Pike,* 49 N. H. 403; *State v. Wells,* 61 Iowa 629, 17 N. W. 90, 47 Am. Rep. 822; *State v. Alexander,* 66 Mo. 148. The federal court has exclusive jurisdiction; the allotments of the Indian lands in the reservation does not affect the reservation or the rights of the Indians. *State v. Columbia George,* 39 Ore. 127, 65 Pac. 604; *United States v. Flournoy Live-Stock etc. Co.,* 69 Fed. 886; *United States v. Mullin,* 71 Fed. 682; *United States v. Logan,* 105 Fed. 240; *Pilgrim v. Beck,* 69 Fed. 895; *Smythe v. Henry,* 41 Fed. 705; *Eells v. Ross,* 64 Fed. 417; *State v. Denoyer,* 6 N. D. 586, 72 N. W. 1014.

*Fremont Campbell, Charles O. Bates* and *Walter M. Harvey,* for respondent. The state court has jurisdiction when the Indian sustains no tribal relations. *People v. Ketchum,* 73 Cal. 635, 15 Pac. 353; *People v. Turner,* 85 Cal. 432, 24 Pac. 857; *Hunt v. State,* 4 Kan. 51; *United States v. Bailey,* 1 McLean 234; *United States v. John Ward,* 1 Kan. 601.

HADLEY, J.—Appellant was charged with the crime of murder in the first degree. The jury found him guilty of manslaughter, and the court sentenced him to serve a term of twenty years' imprisonment in the penitentiary. He has appealed from the judgment.

It is first necessary that we shall inquire into the question of jurisdiction. One of the errors assigned is that the trial court had no jurisdiction to try the cause or to pronounce sentence therein, for the following reasons, towit: That the appellant is an Indian and the deceased was an Indian woman; that the alleged crime was committed within the limits of an Indian reservation and within the boundaries of the state of Washington; that there is no proof that the appellant had severed his tribal relations; and that the federal courts have, therefore, exclusive jurisdiction of the case. This question does not appear to have been raised in the court below, and is urged in this court for the first time. The question presented does not arise out of mere irregularities in procedure, but goes directly to the fundamental power of the court to assume jurisdiction of the cause in any event. Such being the case, we think the appellant can urge the point for the first time in this court.

The information charging the crime discloses none of the facts upon which appellant's claim of want of jurisdiction is based. It is an ordinary information, charging that the crime was committed in Pierce county, Washington. It does not disclose that either appellant or the deceased was an Indian, or that the crime was committed within the boundaries of an Indian reservation. The evidence, however, does show that they were Indians, and while it does not appear that any special effort was made to show that the crime was committed within the limits of an Indian reservation, yet it seems reasonably clear from the evidence that it was committed within the boundaries of the Puyallup Indian reservation.

It will be remembered that one of the points urged under this assignment of error is that the proof does not show that appellant had severed his tribal relations. Appellant

testified, that he does not belong to the tribe of Puyallup
Indians; that his father did not belong to that tribe, but
was a Victorian, and that his mother belonged to the Ne-
squallies; that for some time prior to 1893 he resided in
the state of Oregon, and since the last named date his home
has been, and now is, at Traceton, Kitsap county, Wash-
ington, where he lives with his mother, sister, and brother-
in-law; that just prior to the time of the alleged crime he
was working for Gentry Bros.' show. It thus appears
from his own testimony that he is not by birth a member
of the Puyallup tribe of Indians, and it is not shown that
he has in any other manner ever become allied with that
tribe. He says he attended the Indian school, and while
it is not so specified, yet presumably it was the Puyallup
Indian school; but he does not state that he ever even lived
within the limits of the Puyallup reservation. We think
it follows from his own testimony that appellant has never
borne any tribal relation with the Puyallup Indians and,
as far as the evidence discloses, he has never been in any
way allied by association with his ancestral tribes. For
at least a number of years, he has lived with members of
his own family among white people, and away from any
Indian tribe or reservation. We therefore believe that his
contention upon this point cannot prevail by reason of any
sustained tribal relation.

Our next inquiry must be whether the mere fact that ap-
pellant belongs to the Indian race, together with the fur-
ther fact that the alleged crime was committed within the
boundaries of an Indian reservation, lodges jurisdiction in
the courts of the United States, and prevents the state
courts from trying appellant for the crime charged. Ap-
pellant claims the privilege to be tried by the courts of the
United States under the following federal statute:

"That immediately upon and after the date of the passage of this act all Indians, committing against the person or property of another Indian or other person any of the following crimes, namely, murder, manslaughter, rape, assault with intent to kill, arson, burglary, and larceny, within any territory of the United States, and either within or without an Indian reservation, shall be subject therefor to the laws of such territory relating to said crimes, and shall be tried therefor in the same courts and in the same manner and shall be subject to the same penalties as are all other persons charged with the commission of said crimes, respectively; and the said courts are hereby given jurisdiction in all such cases; and all such Indians, committing any of the above crimes against the person or property of another Indian or other person within the boundaries of any state of the United States, and within the limits of any Indian reservation, shall be subject to the same laws, tried in the same courts and in the same manner, and subject to the same penalties as are all other persons committing any of the above crimes within the exclusive jurisdiction of the United States." Act. Cong. March 3, 1885, c. 341, § 9, 23 Stat. 385.

It will be observed that under the above statute, when one of the crimes enumerated therein has been committed within a territory of the United States, and whether within or without the boundaries of an Indian reservation, the offender shall be tried by the territorial court; but if the crime is committed within the boundaries of any state, and within the limits of an Indian reservation, the case shall be tried by the federal courts. It will be further observed that the general term "Indians" is used in the statute, and there are no qualifying words to indicate whether the statute relates alone to Indians sustaining tribal relations, or whether it relates to all Indians.

Appellant contends that the statute broadly and unqualifiedly includes all Indians. It must be conceded that the

contention seems forceful when the section quoted is read and considered alone without reference to the general subject-matter of the act of which it is a part. An examination of the act shows that its purpose was to make certain appropriations for the benefit of the Indian department, and to fulfill treaty stipulations with various Indian tribes. After making appropriations for the department, the act proceeds to authorize the fulfillment of treaty stipulations with more than fifty distinct and designated tribes and bands of Indians. Provision is then made for the investigation of Indian depredation claims, for schools, and for other miscellaneous matters connected with the Indian service. The last section of the act is the one quoted above. The other sections clearly relate to Indians sustaining tribal relations, and to the machinery of the government for dealing with such. It therefore seems reasonable that the quoted section, being the concluding one of the act, was intended to refer to such Indians only as were under consideration in other portions of the act, viz., tribal Indians.

This view is strengthened by the language of the opinion in *United States v. Kagama,* 118 U. S. 375, 6 Sup. Ct. 1109, 30 L. Ed. 228. Appellant relies largely upon that case. One of the questions certified to be answered in the case was whether the provisions of the section quoted above are constitutional, and the court held that they are valid and constitutional. The other question certified, which was considered by the court, was the following: "Whether the courts of the United States have jurisdiction or authority to try and punish an Indian belonging to an Indian tribe for committing the crime of murder upon another Indian belonging to the same Indian tribe, both sustaining the usual tribal relations; said crime having been committed upon an Indian reservation made and set

apart for the use of the Indian tribe to which said Indians both belong?" It will thus be seen that the question squarely presented the case of Indians sustaining tribal relations, and of a crime by such an Indian upon the person of another, and within the limits of a reservation. The opinion of the court, at page 383, contains the following:

"It will be seen at once that the nature of the offence [murder] is one which in almost all cases of its commission is punishable by the laws of the states, and within the jurisdiction of their courts. The distinction is claimed to be that the offence under the statute is committed by an Indian, that it is committed on a reservation set apart within the state for residence of the tribe of Indians by the United States, and the fair inference is that the offending Indian shall belong to that or some other tribe. It does not interfere with the process of the state courts within the reservation, nor with the operation of state laws upon white people found there. Its effect is confined to the acts of an Indian of some tribe, of a criminal character, committed within the limits of the reservation."

From the foregoing it seems clear that the court interpreted the section here under consideration to refer only to Indians belonging to, and sustaining relations to, some tribe, and such were held to be entitled to trial by the courts of the United States, when the crime is committed within the limits of a reservation, although within the boundaries of a state.

Appellant also relies upon the case of *State v. Columbia George,* 39 Ore. 127, 65 Pac. 604. The opinion in that case is an able and exhaustive discussion and review of the law upon the subject before the court. It was contended that the provisions of the section above quoted were repealed by the act of Congress of February 8, 1887, com-

17-33 WASH.

monly called the "Dawes Act" (chapter 119, 24 Stat. 388), which allotted public lands to Indians, and declared that the allottees to whom such lands shall be patented shall be subject to the laws of the state of their residence, and shall be citizens of the United States. The court held that the later act did not repeal the said provisions of the former, and that the state courts did not have jurisdiction to try the case then under consideration. Both the accused and deceased were members of the Umatilla tribe of Indians, and both were allottees of reservation lands upon which they resided at the time of the commission of the crime. The case therefore came squarely within the rule announced in *United States v. Kagama, supra.* The reasoning of the opinion, we think, shows clearly that the Oregon court understood the federal provision on the subject of jurisdiction here under consideration to relate to tribal Indians, and that it does not apply to such as are not identified with any tribe.

We are not referred to any other case containing all the elements of the one now before us. Here an Indian having no tribal relation went within the limits of a reservation, and, it is alleged, killed another Indian. We have not seen any reported case where an Indian without tribal relations has been tried for a crime committed within a reservation. In the case of *People v. Ketchum,* 73 Cal. 635, 15 Pac. 353, it was held that the state court had jurisdiction to try an Indian without tribal relations, but it does not clearly appear from the opinion whether the crime was committed within or without the limits of a reservation. In *People v. Turner,* 85 Cal. 435, 24 Pac. 857, both the accused and the deceased were Indians, but it does not appear whether the crime was committed within or without a reservation, or what relation, if any, either sus-

tained to any tribe.    It was held that the court had juris-
diction.

Respondent cites *State v. Williams,* 13 Wash. 335, 43
Pac. 15, as being decisive of this case.    It is true what is
said in that opinion would of itself seem to be decisive of
this case, but appellant calls attention to the fact that the
crime there under consideration was not committed within
a reservation.    The following language of the opinion, in-
voked by respondent here, was therefore not directly appli-
cable to the case then decided, to wit:

"Our investigation of the authorities leads us to con-
clude, first, that an Indian who has severed his tribal rela-
tions may be prosecuted in the courts of this state, without
regard to whether the place of the commission of the of-
fense is within or without the limits of a reservation.
.  .  ."

While the above language may not have applied to the
facts of the case then under discussion, yet, based upon our
discussion herein, and upon authorities cited in that opin-
ion, we do not believe it was an erroneous statement of the
law.    We do not believe it was the intention of Congress
that an Indian without tribal relations, who resides among
the white people of a state, and is amenable to the laws
thereof, can go within an Indian reservation in that state
and commit a crime against another Indian, and then as-
sert that the courts of his state cannot try him for the
crime.    It has been often held that the state courts can try
white men for crimes committed within a reservation, and
we can see no reason, in principle, why the jurisdiction of
the state shall not likewise extend to an Indian who is
not allied with any tribe, and is therefore not a subject
of guardianship by the United States.    We hold that, un-
der the facts as they appear in the record, the trial court
had jurisdiction to try the appellant.

It is assigned as error that the court gave the following instruction:

"Embraced within this charge is also that of murder in the second degree and manslaughter, and you may find the defendant guilty of either murder in the first degree, or murder in the second degree, or manslaughter, or not guilty."

It is contended that the evidence shows that the deceased was killed while her assailant was perpetrating a rape upon her person, and further that such an offense is made a distinct crime under the statute, as murder in the first degree, and does not include the lesser crimes of murder in the second degree and manslaughter. While the instruction criticized may be said to have been favorable to appellant, and while under its authority the jury found him guilty of the lesser crime of manslaughter, yet he urges that it is his right to have a verdict of guilty of murder in the first degree or acquittal.

The information does not charge the statutory crime of killing while in the perpetration of, or while attempting to perpetrate, a rape. It charges murder in the first degree, by choking, suffocating, and strangling the deceased. It is true, there was some evidence to the effect that the accused may have desired to ravish the deceased, and further that he may have actually done so. The testimony is not conclusive upon that point, although it strongly tends to support the theory of an actual ravishment. But whatever the evidence may establish upon that subject, a similar question was involved in *State v. Greer,* 11 Wash. 244, 39 Pac. 874. The defendant was charged with the crime of murder in the first degree by the administration of poison. He was found guilty of murder in the second degree. It will be observed that the charge was brought under the

same section of the statute which appellant here invokes, viz., § 7035, Bal. Code, and the same contention was made in that case as is made here. The court held against the contention, and observed as follows:

"The language of the statute is that every person who shall kill another under certain circumstances shall be guilty of murder in the first degree, and there is no distinction as to the crime growing out of the means employed for its commission. We are therefore of the opinion that the crime set out in the statute is a single one and that, by whatever means it may have been committed, it includes the crime of murder in the second degree and manslaughter, as thereafter defined in the statute. The sections defining these crimes, when construed with § 1319 of the Code of Procedure, which provides that 'upon an indictment or information for an offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment or information, and guilty of any degree inferior thereto,' authorized the verdict rendered in the case at bar."

Appellant urges here that *State v. Greer, supra,* has been overruled by *State v. Robinson,* 12 Wash. 349, 41 Pac. 51, 902. We do not so understand the latter case. It was simply held that the character of the offense of manslaughter is such as to exclude the possibility of an accessory before the fact, as an element in its composition. It appeared that the defendant was not present at the time of the killing. He was convicted of manslaughter. The court held that the legal effect of the verdict was to acquit the defendant of the higher degree of homicide, and that the evidence was insufficient to justify a conviction of manslaughter, and he was therefore discharged. The case of *State v. Greer* was particularly distinguished as being unlike the one then before the court. This distinction, we think, was correct. We shall therefore adhere to the rule

of *State v. Greer,* and under that rule the court did not err in giving the criticized instruction in this case.

It is assigned that the court erred in giving the following instruction:

"You are instructed, gentlemen of the jury, that, under the laws of the State of Washington, it is the duty of the county coroner to hold an inquest only when there shall exist reasonable grounds for the belief that the death of the person has been caused by unlawful means at the hands of another, and the cause of the death of such person is unknown. If the cause of the death of such person is known to the coroner, no duty would devolve upon him to hold such inquest. The defendant accused of the crime of killing a person has no right, under the law, to demand the holding of such an inquest."

It is urged that the instruction may have had the effect to cause the jury to believe that the coroner was not obliged to hold an inquest, because he was satisfied that the death of the deceased was brought about by appellant as charged. The instruction practically states the law as found in § 526, Bal. Code. We apprehend from the record that the court gave the instruction in view of the fact that the cross-examination of the coroner might, by inference, have left the impression upon the minds of the jury that an inquest was necessary as a preliminary to the prosecution of the accused. In that connection he testified that he was advised by the prosecuting attorney not to hold an inquest, and gave that as his reason for not doing so. In view of the character of the cross-examination of the coroner, we believe the instruction was pertinent, as stating the law upon the subject, and that it was not prejudicial in the sense suggested by appellant. The jury must have clearly understood from other instructions given that they must convict, if at all, upon the evidence before them at the

trial, and not upon what the coroner may have theretofore believed. Moreover, they had before them at the trial the testimony of the coroner, which showed what he knew upon the subject at the time he, in his discretion, declined to hold an inquest; and that evidence, under the instructions, they were to weigh with all other testimony.

It is assigned as error that the record does not show that appellant was in court during the trial on September 25, 1902. The certificate attached to the statement of facts discloses that the statement does not contain all matters and proceedings occurring at the trial, and furthermore it is not certified that the statement contains all material matters which did occur. It will therefore, be presumed from the record that appellant was present in court at all stages of the trial. In any event, however, a supplemental record brought here by the respondent shows that appellant was present in person and by counsel on the day named.

It is assigned that the court erred in overruling the motion for a new trial, and under this assignment it is urged that the evidence does not support the verdict. We think the testimony amply supports the verdict, and since we find no reversible error, the judgment is affirmed.

FULLERTON, C. J., and ANDERS, DUNBAR, and MOUNT, JJ., concur.