[No. 5476. Decided February 17, 1905.]

THE STATE OF WASHINGTON, *Respondent*, v. JACKY SMOKALEM, *Appellant*.[1]

INDIANS—CRIMINAL LAW—OFFENSE COMMITTED ON RESERVATION—INDIANS NOT SUSTAINING TRIBAL RELATIONS—COURTS—JURISDICTION OVER ALLOTTED RESERVATION. The state courts have jurisdiction over homicides committed by one Puyallup Indian against another on the Puyallup Indian reservation, it appearing that the reservation had been allotted in severalty, all restrictions against alienation removed, and no agency or government control maintained, and that the Indians thereon had maintained no tribal relations for years, but were qualified electors and had adopted the customs, laws and precinct offices of the Whites, since Act Cong.,

[1]Reported in 79 Pac. 603.

23 Stat. 385, conferring jurisdiction of such offenses upon the federal courts applies only to Indians sustaining tribal relations.

TRIAL—JURORS—MISCONDUCT. A conversation between a juror and a deputy sheriff, which has no relation to the case, is not misconduct amounting to ground for a new trial.

CRIMINAL LAW—TRIAL—IMPROPER ARUGMENT—COMMENT ON FAILURE TO TESTIFY. Remarks of the prosecuting attorney in argument asking why they have not explained certain incriminating circumstances, and stating that it was easy for them to do so, should be construed as addressed to the argument of opposite counsel and not a comment on the failure of the accused to testify, which is forbidden by implication by the statute.

SAME. The prosecuting attorney may comment on the failure to explain incriminating circumstances, although in part they might have been explained by the accused, when he does not comment on the failure of the accused to testify.

Appeal from a judgment of the superior court for Pierce county, Snell, J., entered March 26, 1904, upon a trial and conviction of the crime of manslaughter. Affirmed.

*George G. Williamson, Williamson & Williamson,* and *Edward E. Cushman,* for appellant.

*F. Campbell, Charles O. Bates* and *Walter M. Har* for respondent.

RUDKIN, J.—The defendant below was informed against for the crime of murder in the first degree. The jury returned a verdict of guilty of the crime of manslaughter, and from the judgment and sentence of the court this appeal is taken. The following errors are assigned in the brief of counsel: (1) Error in overruling the motion to dismiss, upon the ground that the court below had no jurisdiction to try the cause, or to pronounce judgment therein; (2) error in refusing a new trial on the ground of misconduct of one of the jurors; (3) error in refusing a new trial on the ground of misconduct of the prosecuting attorney; and (4) error in refusing to give certain instructions requested by the appellant.

(1)   The first assignment is based upon the ground that the alleged offense was committed by an Indian, against the person of another Indian, within an Indian reservation, and that, under § 9 of the act of Congress of March 3, 1885 [23 Stat. 385], a state court has no jurisdiction of the person of the accused, or of the offense committed.   It is conceded that the appellant is a Puyallup Indian of the full blood, that the deceased was a Puyallup Indian of the full blood, and that the offense was committed within the territorial limits of the Puyallup Indian reservation, in Pierce county, of this state.   The first question we are called upon to decide is this:  Is the appellant an Indian, within the true intent and meaning of the act of Congress above referred to?

To a proper understanding of this question, a brief statement as to the nature of this reservation, and the status of the Indians living thereon, at the time of the homicide, becomes material.   In 1883 or 1884 the lands on this reservation were allotted to the Indians in severalty, except a small parcel, which is still retained by the government and used for school purposes.   On March 3, 1903, all restrictions against the alienation of these allotted lands by the Indians were removed, and the allotted lands are now held by the Indians by the same tenure, and with the same right of alienation, as are the lands of all other citizens of the state.   For at least five years prior to the commission of this offense, the Indians residing on this reservation maintained no tribal relations, had no chiefs or head men, maintained no form of Indian government, and had neither laws nor customs.   They had abandoned their tribal relations, so far as lay within their power, and had assumed the habits and customs of the Whites among whom they dwell.   The reservation is divided into school districts and precincts; some, at least, of the Indian children

attend the public schools maintained under the general laws
of the state; precinct officers, such as justices of the peace
and constables, are elected and perform the duties of their
offices, in their respective precincts.   The Indians are quali-
fied electors of the state, and all their differences are sub-
mitted to the courts of the state for adjudication and de-
cision, having no courts of their own.   There is no agency
at the reservation, and the federal government assumes no
jurisdiction whatever over the Indians, except in the simple
matter of maintaining the school above referred to.

This, in brief, was the condition of affairs on the reser-
vation at the time of the commission of this offense.   Do
the Indians residing on this reservation, under such cir-
cumstances, come within the purview of the act of Con-
gress above referred to ?   We think not.   This court held,
in the case of *State v. Howard,* 33 Wash. 250, 74 Pac. 382,
that said act of Congress only applied to Indians main-
taining tribal relations; and a further examination of the
subject confirms us in this view.   In that case the court
says:

"We do not believe it was the intention of Congress that
an Indian without tribal relations, who resides among the
white people of a state, and is amenable to the laws thereof,
can go within an Indian reservation in that state and com-
mit a crime against another Indian, and then assert that
the courts of his state cannot try him for the crime."

An Indian without tribal relations, within a reservation,
can have no greater rights than an Indian with the same
status residing without a reservation.   An examination of
the entire legislation of Congress in relation to the Indians
and the Indian country shows that the general government
has dealt with the Indian tribes only, and not with the
individual Indian who has severed his tribal relations and
assumed the habits and customs of the Whites.   It is only
in recent years that the criminal laws of the United States

were extended to the Indian country, so as to include offenses committed by one Indian against the person or property of another Indian of the same tribe.    Prior to such extension, the Indian tribes were self-governing communities, regulated their own domestic affairs, maintained order and peace among their own members by the administration of their own laws and customs.  *Ex Parte Crow Dog,* 109 U. S. 556, 3 Sup. Ct. 396, 27 L. Ed. 1030.

By the act under consideration, only seven felonies were made punishable, when committed by Indians in the Indian country.    All minor offenses were left to be dealt with by the Indian tribes, according to their own laws and customs, administered in their own way.    It is not to be supposed that Congress intended that the remnant of a band of Indians, like the Puyallups, without tribal relations, without laws or customs, and without a government to administer them, should be left to prey upon each other and upon society at large, without restraint or fear of punishment from any source, unless they should commit one of the felonies enumerated in this act.    All the cases to which we are cited, state and federal, deal with tribal Indians only, and we think the act in question must be restricted to these.

(2)    The conversation between the juror Chambers and the deputy sheriff had no relation whatever to this case, and constituted no ground for a new trial.

(3)    The statement of the prosecuting attorney which forms the basis of this assignment is as follows:

"Have they told us how she came by those bruises? how easy it was for them to do so; have they told us what became of or what was done with her clothes? how easy it was for them to do that; have they told us where she fell out of the wagon? not a word, and yet how easy it was for them to have told us that."

It is claimed that this was a comment on the failure of

the appellant to testify in his own behalf. We do not agree with the prosecuting attorney that he has the right to comment on the failure of a defendant to testify in a criminal case. He has no right to comment on matters which the jury, under the law and the instructions of the court, must not consider. It would be idle for the court to instruct the jury to draw no inference against a defendant by reason of his failure to testify in his own behalf, after permitting the prosecuting attorney to comment upon and discuss such failure. The statute, which imposes upon the court the duty to instruct the jury that no inference arises against the defendant by reason of his failure to testify, by implication, forbids the prosecuting attorney, as an officer of the court, to comment upon such failure.

We do not concede, however, that the prosecuting attorney exceeded his authority in this case. We think his contention that the above remarks were addressed to counsel for the appellant, and to their argument, is a reasonable construction of the language used. Furthermore, the prosecuting attorney has an undoubted right to comment upon the failure of the defense to explain incriminating circumstances appearing in evidence, though those circumstances might be explained, in part at least, by the appellant himself. The prosecuting attorney has the right to comment upon the evidence, or upon the lack of evidence, and it is only when he comments upon the failure of a defendant to testify that he violates any of his rights. This was not done in the case at bar.

No error has been pointed out in the giving or refusing of instructions, and we discover none. There is no error in the record, and the judgment of the court below is affirmed.

Mount, C. J., Dunbar, Fullerton, and Hadley, JJ., concur.

Root and Crow, JJ., took no part.