## YOHYOWAN v. LUCE, Sheriff.

(District Court, E. D. Washington, S. D. July 30, 1923.)

### No. 1117.

1. Indians ⬤⟞38(2)—Allotment, title to which is held in trust, is part of "reservation."

An offense committed on Indian allotment within limits of Indian reservation, title to which was held in trust by the government, was committed within the "reservation," within Penal Code, § 328 (Comp. St. § 10502), relative to jurisdiction of offenses committed on Indian reservations.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Reservation.]

2. Indians ⬤⟞38(2)—State court without jurisdiction of offense of manslaughter committed on Indian reservation by one Indian against another.

Under Penal Code, § 328 (Comp. St. § 10502), state court had no jurisdiction of offense of manslaughter committed within Indian reservation by one Indian against another, both Indians being residents of the reservation and members of tribes duly assigned to such reservation, and under legal care and supervision of Indian agent.

⬤⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. **Courts** ⟨⟩⟹96(1), 97(1)—**Both state and federal courts bound by decision of United States Supreme Court on question of jurisdiction of offense committed by Indian on reservation.**

Question of jurisdiction of offense of manslaughter committed on Indian reservation by one Indian against another arises under laws of the United States, and both the federal District Court and state Supreme Court are bound by decision of United States Supreme Court thereon.

4. **Habeas corpus** ⟨⟩⟹45(5)—**Indian tried and convicted in state court for offense committed on reservation not relegated to remedy by appeal.**

An Indian, tried and convicted in state court for manslaughter committed on reservation, of which state court had no jurisdiction, is entitled to resort to habeas corpus, and will not be relegated to appeal, especially where he is without funds with which to take appeal, and time therefor has expired.

Habeas Corpus. Application for writ by Jacob Yohyowan against L. D. Luce, Sheriff of Yakima County, Wash. Petitioner ordered discharged.

This is an application for a writ of habeas corpus. There is no dispute as to the controlling facts, which are as follows: The petitioner, Jacob Yohyowan, was convicted in the superior court of the state of Washington for Yakima county of the crime of manslaughter, and sentenced to the state penitentiary for an indeterminate period of not less than 2 nor more than 20 years. He is an Indian of the full blood, and by birth a member of a tribe of Indians duly assigned to the Yakima Indian reservation in this state. He has resided on the reservation all his life, and at all times has been under the legal care and supervision of the Indian agents from time to time in charge of the reservation. He is the holder of an allotment on the reservation, title to which is held in trust for him by the government. The victim of the alleged homicide was one Eliza Yohyowan, an Indian woman of the full blood, and by birth a member of a tribe of Indians duly assigned by the government to the Yakima Indian reservation. She also resided on the reservation during her entire lifetime, and was continuously under the care of the Indian agents in charge thereof. She also was the holder of an Indian allotment on the reservation, title to which was held in trust for her by the government at the time of her death. The homicide was committed within the Yakima Indian reservation on an allotment owned by one Colwash Yohyowan, title to which at that time was held in trust for him by the government. He also is an Indian of the full blood, a member of a Tribe of Indians assigned to· the reservation, on which he has lived all of his life as a ward of the government, under the care of the Indian agents in charge of the reservation. At all appropriate stages of the trial petitioner duly challenged the jurisdiction of the state court to, hear and determine the cause, but his objections were overruled, and he is now in the custody of the respondent as sheriff of Yakima county in virtue of the judgment of the Yakima county superior court, sentencing him to the state penitentiary as hereinbefore stated.

H. J. Snively, of Yakima, Wash., for petitioner.
Sydney Livesay, of Yakima, Wash., for respondent.

WEBSTER, District Judge (after stating the facts as above). Upon the foregoing facts petitioner rests his application for discharge, on the contention that by virtue of section 328 of the Penal Code (Comp. St. § 10502) jurisdiction of the crime of which he was convicted in the state court is vested exclusively in the courts of the United States, and in consequence the judgment of the superior court of Yakima

county is null and void. Section 328 of the Penal Code reads as follows:

"All Indians committing against the person or property of another Indian or other person any of the following crimes, namely—murder, manslaughter, rape. assault with intent to kill, assault with a dangerous weapon, arson, burglary, and larceny, within any territory of the United States and either within or without an Indian reservation, shall be subject therefor to the laws of such territory relating to said crimes, and shall be tried therefor in the same courts and in the same manner and shall be subject to the same penalties as are all other persons charged with the commission of said crimes, respectively: and the said courts are hereby given jurisdiction in all such cases. And all such Indians committing any of the above-named crimes against the person or property of another Indian or other person within the boundaries of any state of the United States, and within the limits of any Indian reservation, shall be subject to the same laws, tried in the same courts and in the same manner, and be subject to the same penalties as are all other persons committing any of the above crimes within the exclusive jurisdiction of the United States: Provided, that any Indian who shall commit the offense of rape upon any female Indian within the limits of any Indian reservation shall be imprisoned at the discretion of the court."

[1, 2] The petitioner is an Indian. The person whom it is alleged he killed was an Indian; and the crime of which he was convicted was manslaughter, one of the crimes enumerated in the statute. That the commission of the offense was within the limits of an Indian reservation, notwithstanding it was committed on an Indian allotment, title to which was at the time held in trust by the government, is foreclosed by the Supreme Court in the case of United States v. Pelican, 232 U. S. 442, 34 Sup. Ct. 396, 58 L. Ed. 676. The learned and exhaustive opinion in that case by Mr. Justice Hughes leaves nothing to be added on this point. See, also, U. S. v. Celestine, 215 U. S. 278, 30 Sup. Ct. 93, 54 L. Ed. 195; U. S. v. Sutton, 215 U. S. 291, 30 Sup. Ct. 116, 54 L. Ed. 200; Apapas v. U. S., 233 U. S. 587, 34 Sup. Ct. 704, 58 L. Ed. 1104; Ex parte Van Moore (D. C.) 221 Fed. 968.

In State v. Condon, 79 Wash. 97, 139 Pac. 871, the Supreme Court of this state had occasion to consider the precise question presented in this case. In that case the defendant in the state court was accused of the crime of grand larceny. He was an Indian, the owner of the stolen property also was an Indian, and the act of theft was committed within the diminished Colville Indian reservation. Both the defendant and the owner of the stolen property were holders of allotments within the reservation, but neither of them had ever received any patent or fee-simple title to their several allotments from the government. Both of them were at the time of the commission of the larceny under the charge of an Indian agent of the United States. In the course of the opinion, Mr. Chief Justice Crow writing, it is said:

"It will be noted that the prosecuting attorney in the information has pleaded facts showing that the offense therein charged was committed by respondent within that portion of Okanogan county known as the diminished Colville Indian reservation; that the property stolen belonged to one Mrs. Jessie Chief, an Indian of the full blood; that the respondent himself was an Indian of the quarter blood; that he and Mrs. Chief each resided within the Indian reservation; that each of them was the holder of an allotment of land therein; that neither of them had received any patent from the United States for their several allotments; and that they are both under the charge

of an Indian agent of the United States. As above stated, the only question now raised is whether, under section 2145, supra, and section 9 of the Act of March 3, 1885, supra [section 328, Penal Code], exclusive jurisdiction of the crime charged against respondent herein is vested in the federal courts. The Supreme Court of the United States in the recent case of United States v. Pelican, 34 Sup. Ct. 396, has settled this question so completely that a reference to its opinion is all that is necessary to sustain the respondent's contention in that regard. On the authority of that case, we hold that the superior court of the state of Washington, in and for Okanogan county, had no jurisdiction. The demurrer was properly sustained."

Thus it will be seen that the Supreme Court of the United States and the Supreme Court of the state of Washington are in complete accord and harmony on the question presented in the case in hand, both holding to the view that exclusive jurisdiction of the crime of which the petitioner herein was convicted is vested in the federal courts. It is true that in the opinion of the court in the Condon Case no notice was taken of the earlier decisions of the Supreme Court of Washington bearing upon the question, including the case of State v. Smokalem, 37 Wash. 91, 79 Pac. 603, upon which respondent largely relies; the opinion in the Condon Case resting solely upon the case of United States v. Pelican, supra. It is obvious, however, that the Supreme Court of Washington appreciated that the question before it was a federal question, and, no matter what its former holdings may have been, it felt constrained to follow the rule laid down by the Supreme Court of the United States in the Pelican Case, which it adopted and approved unconditionally.

Moreover, the Smokalem Case is easily distinguishable, both from the Condon Case and this case. In that case the reservation involved had long prior to the commission of the crime charged therein been allotted to the Indians in severalty, and all restrictions against alienation of the allotted lands had been removed, so that the Indians held the lands by precisely the same tenure and with the same rights of alienation as are the lands of all other citizens of the state. In addition, it is pointed out in the opinion that, for at least 5 years prior to the commission of the offense, the Indians residing on the reservation maintained no tribal relations, but had assumed the habits and customs of the whites among whom they lived. The Indian children attended the public schools maintained under the general laws of the state, and the reservation had been divided into school districts and precincts; precinct officers, such as justices of the peace and constables, were elected and performed the duties of their offices in their respective precincts; the Indians were qualified electors of the state, and their justiciable controversies were submitted to the state courts, they having no tribal courts of their own. There was no agency at the reservation, and the federal government assumed no jurisdiction whatsoever over the Indians, save in the simple matter of maintaining a school. In these circumstances it might well be said that this reservation had in legal contemplation ceased to be Indian country, and that crimes committed thereon were within the jurisdiction of the state tribunals. Obviously a case dealing with such a state of facts, no matter what reasoning may have been employed by the court, can shed little or no light upon a

case wherein the Indians involved do not hold their allotments free from restrictions against alienation, but where all the allotments are held in trust by the government, and where the government at all times has maintained and still maintains an Indian agency for the supervision and care of the Indian allottees.

[3] If, however, it be conceded for the nonce that the differences in fact just noted do not distinguish the Smokalem Case from the Condon Case, then clearly the former must be considered as impliedly overruled by the latter. Let it also be borne in mind that the Pelican Case, upon which the Condon Case is rested, was decided subsequently to the decision in the Smokalem Case. But in any event both this court and the Supreme Court of the state of Washington are bound by the decision of the Supreme Court of the United States; the question involved being one arising under the laws of the United States and capable of being determined by that court finally, whether the case giving rise to the question originates in a state or in a federal court. The Supreme Court of Washington, in the Condon Case, no doubt thought it unnecessary, in view of the Pelican Case, to do anything more than to place itself in harmony with the principles announced in that case.

[4] It was suggested at the argument that this court should not interfere by habeas corpus with the state's custody of the petitioner, but that he should be relegated to an appeal to the Supreme Court of the state, and, if the decision of that court should be adverse to his contention, then to require him to carry his case by writ of error to the Supreme Court of the United States. The same contention was pressed upon the court in Ex parte Van Moore, supra, a case very similar in its facts to this one. In response to the contention, Elliott, District Judge, said:

"The contention of the learned Attorney General that it was not intended by Congress that federal courts should, by writs of habeas corpus, obstruct the administration of the state criminal laws in the state courts, is answered by the determination of this first contention, that the exclusive jurisdiction of the offense charged was within the courts of the United States. Ex parte Royall, 117 U. S. 241, 6 Sup. Ct. 734, 29 L. Ed. 868; Ex parte Bridges, 2 Woods, 428, Fed. Cas. No. 1,862; Ex parte Lange, 18 Wall. 163, 21 L. Ed. 872; Ohio v. Thomas, 173 U. S. 276, 19 Sup. Ct. 453, 43 L. Ed. 699; In re Loney, 134 U. S. 372, 10 Sup. Ct. 384, 33 L. Ed. 949; In re Neagle, 135 U S. 1, 10 Sup. Ct. 658, 34 L. Ed. 55. I am of the opinion that the state court was without jurisdiction to hold any hearing or make any determination in the premises. and that the order of the state court directing the petitioner's imprisonment was and is void as distinguished from being irregular, and therefore that petitioner is held in the custody of the authorities of the state penitentiary of the state of South Dakota under illegal process."

So in this case the petitioner is held in custody under a judgment which is null and void for lack of jurisdiction to render it, and petitioner is now held in custody in virtue of illegal process. Moreover, it appeared at the hearing that the petitioner's trial in the state court extended over many days, that a transcript of the evidence alone would cost approximately $500, that he had absolutely no funds with which to take or prosecute an appeal, and that the time limited by law within which he might do so had long since expired. The petitioner is a ward of the government, being a member of the race characterized by the

opinion in the Pelican Case as "a dependent people." · He is in custody under a void judgment. For lack of funds he has been unable to have his case reviewed in the appellate court of the state. The time within which this might be done has expired. To deny him relief by habeas corpus is to deny all relief, and to leave him to undergo a penalty imposed by a tribunal having no legal power to entertain the, cause, for the reason that exclusive jurisdiction of the case is by the statute hereinabove quoted exclusively vested in the courts of the United States.

These, in my opinion, constitute such exceptional circumstances as to bring the case within the rule declared by the cases cited by Judge Elliott in the Van Moore Case, and to warrant the discharge of the petitioner from the respondent's custody. An order will be entered accordingly.