JOSEPH KITTO v. STATE OF NEBRASKA.

FILED APRIL 3, 1915.    No. 18883.

1. . Indians: CITIZENSHIP. By the provisions of the act of congress approved February 8, 1887 (24 U. S. St. at Large, ch. 119, pp. 388, 390), all Indians born within the territorial limits of the United States, to whom allotments of land in severalty have been made under the provisions of said act, or other law or treaty, and all Indians, born as aforesaid, who have voluntarily taken up their residence in the United States separate and apart from any tribe of Indians therein, and adopted the habits of civilized life, are

Kitto v. State.

made citizens of the United States, and such Indians residing in this state are citizens thereof.

2. ——: Offenses: Jurisdiction.  As to such Indians, congress, by an act approved March 3, 1885 (23 U. S. St. at Large, ch. 341, p. 385), has expressly reserved to the federal courts jurisdiction over certain offenses specially enumerated in section 9 of such act, committed against the person or property of another Indian or other person within the boundaries of any state and within the limits of any Indian reservation.  *Held*, that all crimes and misdemeanors not so expressly reserved, or not subsequently reserved by act of congress, are within the jurisdiction of the state courts of the state in which such allottee Indians may reside, as provided in the acts of congress approved March 3, 1863 (12 U. S. St. at Large, ch. 119, p. 819), and February 8, 1887, *supra*.

3. ——: ——: ——.  The crime of assault by defendant, an allottee Indian, upon another allottee Indian in this state, and within the limits of an Indian reservation, not being one reserved by any act of congress to the jurisdiction of the federal courts, is within the jurisdiction of the courts of this state.

Error to the district court for Knox county:  Anson A. Welch, Judge.  *Affirmed.*

*W .A. Meserve,* for plaintiff in error.

*Willis E. Reed, Attorney General,* and *George W. Ayres, contra.*

Fawcett, J.

Plaintiff in error, who was defendant in the court below and will be designated as such herein, is a Santee Sioux Indian.   He is an allottee of land in Knox county, under the provisions of the act of congress of March 3, 1863, (12 U. S. St. at Large, ch. 119, p. 819), and of the act of congress of July 1, 1898 (30 U. S. St. at Large, ch. 545, p. 583).  He became a citizen of the United States under section 6 of the act of congress of February 8, 1887 (24 U. S. St. at Large, ch. 119, pp. 388, 390).  He was charged in the district court for Knox county with an assault upon one John Henry, who is also a Santee Sioux Indian and a like allottee.   The assault was committed upon the allotment of one Simon Kitto, also a Santee Sioux Indian, who received his allotment under and by virtue of article

VI of the treaty proclaimed February 24, 1869 (15 U. S. St. at Large, p. 635), and the act of congress of March 1, 1883 (22 U. S. St. at Large, ch. 61, p. 444). It appears, therefore, that the assault was committed by one Indian upon another on land of an allottee and within the limits of a reservation. Defendant filed a plea in abatement, praying judgment, that the information be quashed for the reason that the court is wholly lacking in jurisdiction to determine the information or to hold the defendant for trial thereon or to impose any sentence, should he be found guilty, for the reason that defendant now is, and was at the time of committing said offense, an Indian belonging to the Santee Sioux tribe of Indians, and for over ten years last past has been a Santee Sioux Indian allottee, holding and owning "upon" a conditional patent of allotment from the United States (certain land described), which allotment was made to defendant under the act of March 3, 1863, *supra,* and the act of congress of July 1, 1898, *supra;* that the said John Henry, on whom the assault was alleged to have been committed, was on the date of the alleged assault, now is, and always has been a Santee Sioux Indian of the Santee Sioux tribe of Indians, and was at the time of the assault an Indian allottee, owning 80 acres of land under a patent of allotment from the United States under the same laws as above set out; that the alleged assault was committed upon certain land described, which land was at said time, and now is, and for over 20 years has been the allotment of Simon Kitto, who for over 30 years has been a member of the Santee Sioux tribe of Indians, under article VI of the treaty of the United States and the Santee Sioux Indians, proclaimed February 24, 1869, *supra,* and the act of congress of March 1, 1883, *supra,* which said land now is, was on the date of the alleged assault, and for the last 20 years has been a reservation of the United States of and belonging to the said Simon Kitto, a Santee Sioux Indian, and is not within the criminal jurisdiction of the courts of this state. To this plea the state interposed a demurrer on the ground that it does not state facts sufficient to quash the informa-

Kitto v. State.

tion or to state any defense thereto. Thereupon the defendant demurred to the information, the ground of the demurrer being that the information does not state facts sufficient to constitute an offense punishable by the laws of the state because the information on its face shows that the state court has no jurisdiction over the person of defendant, "or to hold, try, sentence or punish him under said information," and that the information on its face shows that whatever crime was committed "was an offense within the exclusive jurisdiction of the courts of the United States, and not within the jurisdiction of this court." There was also a motion in arrest of judgment, covering substantially the same grounds as the plea in abatement and demurrer. The district court sustained the demurrer to the plea in abatement, and, defendant not electing to plead further, the plea was dismissed. The court overruled both the demurrer to the information and the motion in arrest of judgment. Defendant was arraigned, pleaded guilty, and was sentenced to pay a fine of $50 and costs of prosecution and stand committed to the county jail until the fine and costs were paid. From this judgment defendant appeals.

The question to be determined is one of jurisdiction. Can a Santee Sioux Indian, who is an allottee of land from the United States government, be punished in the state courts for an assault, of the character that makes it a misdemeanor, upon another Indian, who is also an allottee, within the limits of a reservation? In our judgment, the district court properly answered the question in the affirmative. This holding does not in any manner impinge upon the right of the United States government to make rules and regulations in the interest of the Indians; nor do we desire to be understood as holding that, by reason of the fact that, by its several acts providing for allotment of lands to the various tribes of Indians and conferring upon them the right of citizenship, congress has relinquished its right, so long as the government holds the title to the lands allotted to the Indians in trust for them, to place limitations upon the control of the Indians over such al-

lotments or to prescribe the extent to which such allottees (who until the final patents are issued are still wards of the government) may be subject to the laws, either civil or criminal, of the state in which the lands allotted to them are situate. That the United States government has full and absolute control of its territories, reservations and Indian wards cannot be questioned. If, therefore, the offense with which the defendant stands charged is one which congress has reserved to the United States government the right to punish, and the jurisdiction over which it has reserved to the federal courts, then the district court was without jurisdiction. Otherwise its jurisdiction must be upheld.

The act of congress approved March 3, 1863, *supra,* authorized and directed the president to assign and set apart for the Sisseton, Wahpaton, Medawakanton, and Wahpakoota bands of Sioux Indians unoccupied lands outside of the limits of any state, sufficient in extent to enable him to assign to each member of said bands, who was willing to adopt the pursuit of agriculture, 80 acres "of good agricultural land." In section 5 of the act (p. 820), it is provided: "Said Indians shall be subject to the laws of the United States, and to the criminal laws of the state or territory in which they may happen to reside."

The act of July 1, 1898, *supra,* which was an act referring to various tribes of Indians, provides: "That the Secretary shall cause patents to issue to the Santee Sioux Indians who were assigned lands in the state of Nebraska under the act approved March third, eighteen hundred and sixty-three, entitled 'An act for the removal of the Sisseton, Wahpaton, Medawakanton, and Wahpakoota bands of Sioux or Dakota Indians, and for the disposition of their lands in Minnesota and Dakota,' which assignments were approved by the President May eleventh, eighteen hundred and eighty-five. Said patent shall be of the form and legal effect prescribed by the fifth section of the act approved February eighth, eighteen hundred and eighty-seven, entitled 'An act to provide for the allotment of lands in severalty to Indians on the various reserva-

tions, and to extend the protection of the laws of the United States and the territories over the Indians, and for other purposes.' "

The act of February 8, 1887, *supra,* referred to in the act of July 1, 1898, in section 6 provides: "That upon the completion of said allotments and the patenting of the lands to said allottees, each and every member of the respective bands or tribes of Indians to whom allotments have been made shall have the benefit of and be subject to the laws, both civil and criminal, of the state or territory in which they may reside; and no territory shall pass or enforce any law denying any such Indian within its jurisdiction the equal protection of the law. And every Indian born within the territorial limits of the United States to whom allotments shall have been made under the provisions of this act, or under any law or treaty, and every Indian born within the territorial limits of the United States who has voluntarily taken up, within said limits, his residence separate and apart from any tribe of Indians therein, and has adopted the habits of civilized life, is hereby declared to be a citizen of the United States, and is entitled to all the rights, privileges, and immunities of such citizens, whether said Indian has been or not, by birth or otherwise, a member of any tribe of Indians within the territorial limits of the United States without in any manner impairing or otherwise affecting the right of any such Indian to tribal or other property."

The act of March 1, 1883, *supra,* provides that the patents issued to the allottees should be of the legal effect and should declare that the United States holds the allotted lands for the period of 25 years in trust for the sole use and benefit of the Indian to whom such allotment should be made, or in case of his decease, for the benefit of his heirs, "according to the laws of the state or territory where such land is located," and that at the expiration of that period the United States would convey the land by patent to such Indian or his heirs in fee discharged of the trust and free of all charge or incumbrance whatsoever, and that no contract by any such Indian creating

any charge or incumbrance on the lands so allotted or liability of such land for payment thereof should be valid.

The act of March 3, 1885 (23 U. S. St. at Large, ch. 341, sec. 9, p. 385), provides: "That immediately upon and after the date of the passage of this act all Indians committing against the person or property of another Indian or other person any of the following crimes, namely, murder, manslaughter, rape, assault with intent to kill, arson, burglary, and larceny within any territory of the United States, and either within or without an Indian reservation, shall be subject therefor to the laws of such territory relating to said crimes, and shall be tried therefor in the same courts and in the same manner and shall be subject to the same penalties, as are all other persons charged with the commission of said crimes, respectively; and the said courts are hereby given jurisdiction in all such cases; and all such Indians committing any of the above crimes against the person or property of another Indian or other person within the boundaries of any state of the United States, and within the limits of any Indian reservation, shall be subject to the same laws, tried in the same courts and in the same manner, and subject to the same penalties as are all other persons committing any of the above crimes within the exclusive jurisdiction of the United States."

Our attention has not been called to, nor have we by an independent examination been able to find, any act of congress or rule or regulation of the interior department, which reserves to the federal courts either the exclusive or concurrent jurisdiction over crimes or misdemeanors, other than the specific crimes above named, when committed by an Indian allottee within the boundaries of a state, whether committed within or without the limits of a reservation in such state, except the act of January 30, 1897 (29 U.. S. St. at Large, ch. 109, p. 506), considered in *Matter of Heff*, 197 U. S. 488, and *Hallowell v. United States*, 221 U. S. 317. This act was one to regulate the introduction of liquor into lands of allottee Indians. Under somewhat different facts one case denied the jurisdiction of the federal

courts and the other sustained it.   Both opinions show
that the controlling question was the best interests of the
Indians as "a dependable people."   As said by Mr. Justice
Day, in the *Hallowell* case:  "It is a result of the recently
decided cases in this court (citing four cases) that the mere
fact that citizenship has been conferred upon Indians does
not necessarily end the right or duty of the United States
to pass laws in their interest as a dependable people."
See page 324 for the entire paragraph containing this
quotation.   It seems to us that if any meaning whatever
is to be given to section 5 of the act of March 3, 1863, that
"said Indians shall be subject to the laws of the United
States, and to the criminal laws of the state or territory
in which they may happen to reside," and to the language
of section 6 of the act of February 8, 1887, that "upon the
completion of said allotments and the patenting of the
lands to said allottees, each and every member of the re-
spective bands or tribes of Indians to whom allotments
have been made shall have the benefit of and be subject to
the laws, both civil and criminal, of the state or territory
in which they may reside; and no territory shall pass or
enforce any law denying any such Indian within its juris-
diction the equal protection of the law," the conclusion we
have reached must be right.   The defendant and other
allottees of his tribe within the state of Nebraska are given
the full protection of its laws.   They are citizens of the
state.   They are electors.   They are entitled to hold office.
They are competent to serve on juries, thereby participat-
ing in the enforcement of the laws, both civil and criminal,
of the state.   They have accepted allotments of land and
with it citizenship.   They have adopted the habits of civi-
lized life.   They are residing upon their allotments, to all
intents and purposes separate and apart from any tribe.
They are no longer bound by the laws or customs of their
tribe.   Congress has not reserved to the federal courts the
jurisdiction to punish for misdemeanors.   If such jurisdic-
tion is not vested in the state courts, it is not vested any-
where, and the perpetrators of misdemeanors of all kinds
on an Indian reservation may go, unpunished.   Such

clearly, was not the intention of congress. It is not to be found within any of its enactments. It is against public policy, and contrary to the laws of this state, which extend to all, both Indians and white men, within or without the limits of a reservation, the equal protection of the law. *United States v. Celestine*, 215 U. S. 278; *United States v. Sutton*, 215 U. S. 291; *Tiger v. Western Investment Co.*, 221 U. S. 286; and *Hallowell v. United States, supra*, are relied upon by defendant to sustain his contention. The state cites, *contra*, *United States v. Kiya*, 126 Fed. 879, and *Matter of Heff, supra*. We think an examination of these cases cited on both sides will show that they in no manner conflict with our holding herein. In support of the views herein expressed, we cite *State v. Norris*, 37 Neb. 299, *In re Now-ge-zhuck*, 69 Kan. 410, and *State v. Denoyer*, 6 N. Dak. 586.

A consideration of the various acts of congress in relation to the wards of the government, and of the various decisions of the supreme court of the United States construing them, is interesting, and much space might be used in discussing the same. The writer has read them with keen interest, but is unable to see where any benefit would accrue to the profession by further extending this opinion.

AFFIRMED.

BARNES and SEDGWICK, JJ., not sitting.