STATE, Plaintiff, vs. SHEPARD, Defendant.

*November 7—December 2, 1941.*

For the plaintiff there was a brief by the *Attorney General, Warren H. Resh,* assistant attorney general, *A. H. Smith,* attorney for the conservation commission, and *S. J. Conway,* district attorney for Forest county, and oral argument by *Mr. Resh* and *Mr. Smith.*

*Edward W. Schenk* of Wabeno, for the defendant.

FOWLER, J. The defendant was convicted before a justice of the peace of an offense under the state game laws. He appealed to the circuit court where he waived a jury. On trial to the court the facts were stipulated to be as follows:

"One Nelson Shepard, an Indian, killed a deer on or about the 2d day of May, 1938, on land occupied by his father, Frank Shepard, an Indian duly enrolled in the band of the Potawatomi Indian tribe. Nelson Shepard gave half the deer to Frank Shepard his father.

"On the 7th day of June, a conservation warden arrested Nelson Shepard, who admitted killing the deer, and was fined. Frank Shepard was also arrested, admitting having received half of the deer, but defended his rights to the possession thereof by virtue of he being an Indian residing upon land held in trust by the United States government, for the benefit of the Potawatomi Indians. His defense is, and was, that the state conservation warden had no authority or jurisdiction to arrest him for the possession of venison killed upon government land and possessed by Indians thereon.

"The land upon which the Indians reside was deeded to the government of the United States of America, to have and to hold the same forever, and particularly for the purpose of allotments to individual members of the Wisconsin band of Potawatomi Indians residing in the states of Wisconsin and Michigan, as provided in the act of congress of June 30, 1913.

"The status of the Indian, by virtue of the act of congress of 1924, makes all Indians born within the territory of the United States, citizens thereof, and the said act in no way limits or abridges the guardianship of the United States of America with reference to the control of their property.

"The justice court found that Frank Shepard was guilty of illegal possession of venison in closed season, contrary to and in violation of section 29.39 of the Wisconsin statutes, and thereupon sentenced said defendant, Frank Shepard, to thirty (30) days in the Forest county jail, from which sentence Frank Shepard appeals."

On the stipulated facts the circuit court found the defendant guilty. Being in doubt whether the defendant should be sentenced on this finding the court certified the following questions to this court for answer, pursuant to sec. 358.08, Stats.:

"1. Does the state of Wisconsin lose its sovereignty and criminal jurisdiction over lands acquired by the United States government in the state of Wisconsin where such lands are not acquired pursuant to an enabling act duly enacted by the legislature, but in a proprietary manner?

"2. May a state conservation warden lawfully arrest a tribal Indian, residing on lands acquired by the United States in a proprietary manner, for a violation of state fish and game laws committed on such lands?"

The case turns on whether in criminal matters the land on which the defendant was in possession of the venison is under the jurisdiction of the United States or the state.

The defendant bases his claim that the jurisdiction stated is in the United States primarily on par. 17, sec. 8, art. I, of the United States constitution which provides that—

"The congress shall have power . . . To exercise exclusive legislation in all cases whatsoever, . . . over all places purchased *by the consent of the legislature of the state* in which the same shall be, for the erection of forts, magazines, arsenals, dockyards, and other needful buildings;—And

"To make all laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this constitution in the government of the United States, or in any department or officer thereof."

There is no question that had the defendant possessed the venison on land needful for any purpose purchased by the United States *with the consent of the state,* the state would have no jurisdiction to prosecute him for the offense charged. *United States v. Unzeuta* (1930), 281 U. S. 138, 50 Sup. Ct. 284, 74 L. Ed. 761. Sec. 1.01, Stats., declares that—

"The sovereignty and jurisdiction of this state extend to all places within the boundaries thereof . . . subject only to such rights of jurisdiction as have been or shall be acquired by the United States over any places therein. . . ."

Sec. 1.02, Stats., originally enacted in 1867, declares that—

"Subject to the conditions mentioned in section 1.03 the legislature hereby consents to the acquisitions heretofore effected and hereafter to be effected by the United States, by gift, purchase or condemnation proceedings, of the title to places or tracts of land within the state; and, subject to said conditions, the state hereby grants, cedes and confirms to the United States exclusive jurisdiction over all such places and tracts. Such acquisitions are limited to the following purposes:

"(1) To sites for . . . any purpose whatsoever contemplated by" par. 17, above quoted.

Subs. (2) and (3) of sec. 1.02, Stats., cover a forty-thousand-acre tract described to be used for military purposes and to structures on land acquired in improving navigation of

waters within or on the borders of the state. Sec. 1.03 establishes conditions precedent to the vesting of jurisdiction of the United States granted by sec. 1.02. It is not claimed or suggested that these conditions precedent required for the vesting of jurisdiction to the United States over the tract here involved have been performed, so that the state has not given the consent indicated by the phrase italicized in the above quotation of par. 17 of the United States constitution.

It is stated in *Surplus Trading Co. v. Cook* (1930), 281 U. S. 647, 650, 50 Sup. Ct. 455, 74 L. Ed. 1091, that:

"It is not unusual for the United States to own within a state lands which are set apart and used for public purposes. Such ownership and use without more do not withdraw the lands from the jurisdiction of the state. On the contrary, the lands remain part of her territory and within the operation of her laws, save that the latter cannot affect the title of the United States or embarrass it in using the lands or interfere with its right of disposal."

When the United States acquires land without the consent of the state for purposes other than stated in said par. 17 of sec. 8, art. I, of the United States constitution, and it is stipulated the land occupied by the defendant was acquired without the state's consent, the federal government does not exercise exclusive jurisdiction. The acquiring of land for federal purposes does not oust state jurisdiction in matters pertaining to state authority. Jurisdiction of the state is reserved to the state for local purposes when such jurisdiction does not interfere with the performance of the function of the United States government for which the land was acquired. To vest jurisdiction in the United States even of lands in Indian country within a state a cession of such jurisdiction by the state is essential. *Silas Mason Co. v. Tax Comm.* (1937) 302 U. S. 186, 58 Sup. Ct. 233, 82 L. Ed. 187. In such case the United States is only a proprietor of the land,

and the state's jurisdiction is unimpaired, except that it may not interfere with performance by the United States of its governmental function. *Silas Mason Case, supra; Surplus Trading Co. Case, supra; Williams v. Arlington Hotel Co.* (8th Cir. 1927) 22 Fed. (2d) 669.

The defendant, besides the constitutional provision cited, relies on a statute of the United States (25 USCA, § 217; R. S. § 2145) which provides:

"Except as to crimes the punishment of which is expressly provided for in this title, the general laws of the United States as to the punishment of crimes committed in any place within the sole and exclusive jurisdiction of the United States, . . . shall extend to the Indian country."

The claim is that the tract occupied by the defendant is "Indian country" within the meaning of this statute. It is conceded by the state that under these sections crimes by one Indian against another committed on an Indian reservation are not punishable by the state. *State v. Rufus* (1931), 205 Wis. 317, 237 N. W. 67. Although in *State v. Johnson* (1933), 212 Wis. 301, 249 N. W. 284, such right was upheld as to a crime committed on land within the boundaries of a reservation that had been patented in fee to an Indian allottee. The *Rufus Case, supra,* by the language of the opinion, does not help the defendant because the land here involved was never within an Indian reservation, although had it been the *Johnson Case, supra,* would not apply because the land was only allotted to the defendant for occupation and use and the fee remained in the United States.

The tract occupied by the defendant is a forty-acre tract purchased from a private person by the United States government under 38 U. S. Stats. at L., sess. I, ch. 4, sec. 24, pp. 101, 102, for allotment to the Potawatomi Indians who refused to go to Oklahoma territory with the other Potawatomi Indians but remained in Wisconsin. The tracts purchased under this act consisted of separate noncontiguous

parcels of land of not more than one hundred sixty acres in extent, and a number of forty-acre tracts so purchased are located in Forest county.

The defendant claims however that although the tract was never within a reservation, by analogy the United States government has the same rights in and jurisdiction over the land that it has over lands in an Indian reservation allotted for use and occupation. He bases this claim in large part upon *United States v. McGowan* (1938), 302 U. S. 535, 58 Sup. Ct. 286, 82 L. Ed. 410. The land involved in that case was a twenty-three-acre tract designated as the Reno Indian colony, purchased by the United States government from a private person to provide for needy nonreservation Indians scattered over Nevada. The colony was under the superintendence of the United States government. The Indians in the colony numbered several hundred, and were established in homes on the tract and were given the same protection as Indians on a reservation. A United States statute, 25 USCA, § 247, prohibited importation of intoxicating liquor into the "Indian country," and declared forfeited vehicles used in introducing intoxicants therein. The Reno colony was declared by the *McGowan Case, supra,* "Indian country" within the meaning of this statute. The basis of the holding was that the Indians of the colony were wards of the United States government, and that government extended its protection "over all dependent Indian communities within its borders, whether within its original territory or territory subsequently acquired, and whether within or without the limits of a state," and "the policy of congress, uniformly enforced through the decisions of this court, has been to regulate the liquor traffic with Indians occupying such a settlement." Opinion, pp. 536–538. The opinion, however, goes on to state, p. 539:

"The federal prohibition against taking intoxicants into this Indian colony does not deprive the state of Nevada of its sovereignty over the area in question. The federal govern-

ment does not assert exclusive jurisdiction within the colony. Enactments of the federal government passed to protect and guard its Indian wards only affect the operation, within the colony, of such state laws as conflict with the federal enactments."

The situation of the defendant was widely different from the situation of the Indians on the Reno tract. The federal government exercised no superintendence over the tract. No federal statute existed to protect the defendant from interference with his possession of venison. The state law violated by the defendant in no way conflicted with any federal enactment, and no deprivation of the sovereignty of the state of Wisconsin is here involved. It is true as contended by the defendant that it has been held that if land in a reservation is allotted to an Indian ward for occupation but is held in trust by the United States as the tract involved is held, the state game law does not apply. *State v. Cloud* (1930), 179 Minn. 180, 228 N. W. 611; *United States v. Pelican* (1914), 232 U. S. 442, 34 Sup. Ct. 396, 58 L. Ed. 676. General statements in the opinions in these cases seem somewhat inconsistent with the later federal cases above discussed. Under the *Pelican Case, supra,* the land may be "Indian country" within the meaning of the term in 25 USCA, § 217. But there is a wide and controlling distinction between the defendant on the forty-acre tract here involved allotted to him, contiguous with land privately owned by others than Indians, and entirely separate from any other lands held by the United States government for tribal Indians and an Indian on land within an Indian reservation allotted to him for use that is held in trust by the United States for Indians.

*By the Court.*—It is considered that question No. 1 submitted for answer to the court should be answered "No," and that question No. 2 should be answered "Yes."